**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____
                                      :

J.N., a minor, individually and        :     Hon. Joseph H. Rodriguez
by his parent and legal guardian, P.S.,   :

                                     :     Civil Action No. 05-02520

           Plaintiff,             :

                                     :

             v.                    :     **OPINION AND ORDER**

                                     :

MT. EPHRAIM BOARD OF EDUCATION,   :

                                     :

          Defendant.            :
_____     :

This matter has come before the Court on cross-motions for summary judgment filed by Plaintiff, J.N., a minor, individually and by his parent and legal guardian, P.S., and by Defendant the Mt. Ephraim Board of Education (hereinafter "the Board"). For the reasons discussed herein, the Court will grant Plaintiff's Motion for Summary Judgment and deny Defendant's Cross Motion for Summary Judgment.

### I.  Factual Background and Procedural History

To understand the context of the claims against the Mt. Ephraim Board of Education, it is necessary to briefly review the underlying allegations between Plaintiff and Defendant.  J.N. is a 16-year-old male with multiple disabilities, including intractable epilepsy and social, motor, and speech delays.  (See Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. at 7.)  At all relevant times, J.N. was domiciled within the Mt. Ephraim School District, and has been eligible for special education and related services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 et. seq. (2006), (hereinafter "IDEA").  (Id.)  Pursuant to the IDEA, the Board, through its Child Study

Team, developed a series of Individualized Education Programs ("IEPs") for J.N. that recommended that his educational program be delivered in specialized, therapeutic, out-of-district day placements. (Id. at 1-2.) During the 2002-2003 and 2003-2004 school years, J.N.'s special education program was implemented at the Bankbridge Elementary School. (Id. at 2.)

During the 2004-2005 school year, J.N.'s mother, P.S., became increasingly frustrated with Bankbridge's faculty and administration. (Id.) Specifically, P.S. requested that a one-to-one classroom aide be assigned to J.N. throughout the school day. (Id.) That request was denied. P.S. was also dissatisfied with how Bankbridge handled J.N.'s seizures at school. (Id.) After multiple denials for a one-to-one aide, P.S. demanded J.N.'s transfer to the Bancroft School in Haddonfield, New Jersey – a private school which also offers a broad range of educational, vocational, and residential services to disabled students. (Id.)

After the Mt. Ephraim Child Study Team denied the demand for a change in placement from Bankbridge to Bancroft, and maintained its position that J.N. did not need a one-to-one classroom aide while at Bankbridge, Plaintiff filed a Due Process Petition with the New Jersey Office of Special Education on March 2, 2005. (Id.) It is this Due Process Petition that forms the basis of the instant Complaint seeking attorney's fees, as Plaintiff claims "prevailing party" status under the IDEA. (Id. at 2-3.)

Beside P.S.'s requests for a one-to-one aide and a transfer to Bancroft, the Board alleges that J.N.'s mother had not raised any other issues with Bankbridge or the Mt. Ephraim Child Study Team prior to the filing of the Due Process Petition. (Id. at 3.) The Board also argues that the "driving force" behind all claims was the removal of J.N. from

2

Bankbridge to another program.  (Id. at 17.)  In addition, the Board alleges that the

provision for a one-to-one aide was agreed upon prior to litigation, so that the only issue

in controversy was J.N.'s placement.  (Id.)  As a result, Defendant claims that any

success was both technical and de minimis.  (Id. at 18.)

Within this context, the March 2, 2005 Due Process Petition filed by Plaintiff's

counsel complained of the following issues:

> 1. Failure of the Board to provide J.N. with an in-class aide and needed
> accommodations for his disability for which we seek the provision of same;
>
> 2. Failure of the Board to offer J.N. toilet training in his IEP for which we seek the
> provision of same;
>
> 3. Failure of the Board to evaluate J.N. for a positive behavior intervention plan
> for which we seek an independent evaluation for said plan;
>
> 4. Failure of the Board to offer J.N. a placement that can meet his needs and is
> closer to his residence for which we seek placement at Bancroft.

(See First Am. Compl. at 3.)

On Friday, March 11, 2005, the business day before a scheduled court

appearance, the Board, via an e-mail to Plaintiff, offered to provide a one-to-one

classroom aide for J.N.  (See Def.'s Br. at 11.)  Plaintiff did not respond before the

Monday, March 14 proceeding with Administrative Law Judge (hereinafter "ALJ")

Tassini, who was substituting for the judge assigned to the case, ALJ Metzger.  The

March 14, 2005 meeting with Judge Tassini was merely a scheduling conference to

resolve the Board's request for a postponement of the hearing to a new date.  (Id.)  The

issue of the one-to-one aide was not resolved at that proceeding.  (See March 14, 2005

Tr.)  Subsequently, on May 5, 2005, the parties engaged in discussions with Judge

Metzger in his chambers regarding possible settlement of the remaining issues.  (See

Def.'s Br. at 13.)  There were several follow-up telephone conferences on May 10, 2005

and on May 12, 2005.  (Id.)

    With Judge Metzger's active participation and assistance as a mediator, the

parties entered into a settlement agreement, labeled a "Consent Order," on May 12,

2005 which provided Plaintiff with the following relief:

> 1. The Board agreed to provide J.N. with a one-to-one aide who will follow the
> first aid seizure protocol as prescribed by J.N.'s physician;
>
> 2. The aide's communication regarding J.N.'s progress shall be included in J.N.'s
> progress notes and forwarded by J.N.'s teacher to P.S. on a weekly basis;
>
> 3. An evaluation for a positive behavior intervention plan will be performed by
> the psychologist recommended by J.N.'s doctor and paid for by the Board;
>
> 4. The Board shall include a toilet training goal for J.N. in his IEP and ensure he
> remains clean throughout the day.

(See Pl.'s Aff. and Br. at 17.)

    On May 13, 2005, Plaintiff filed a Complaint in this Court appealing the March

13, 2005 decision, in part, pursuant to 20 U.S.C. § 1415(i)(2), and seeking attorney's fees

and costs as the prevailing party, pursuant to 20 U.S.C. § 1415(i)(3)(B)(i).  (Id. at 4.)

Defendant filed an Answer on June 15, 2005.  (Id.)


## II.  Discussion

### A.    Attorney's Fees and Costs

    Under the "American Rule," parties are typically responsible for their own

attorneys' fees.  See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240,

247 (1975).  However, § 615(i)(3)(B) of the Individuals with Disability Education Act

("IDEA") provides:  "In any action or proceeding brought under this section, the court,

in its discretion, may award reasonable attorneys' fees as part of the costs to the parents

of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).

The Supreme Court has held that a "prevailing party" must be "successful" in the

sense that it has been "awarded some relief by a court."  Buckhannon Bd. & Care Home,

Inc. v. W.V. Dep't of Health and Human Res., 532 U.S. 598, 603 (2001).  The Court

noted that this concept of "success" also includes a defendant's voluntary compliance.

Id. at 605.  The Court also acknowledged that a party benefitting from a settlement

agreement could be a "prevailing party" provided the "change in the legal relationship of

the parties" was in some way "judicially sanctioned."  Id. at 604-05.

The Third Circuit has held that Buckhannon applies to the fee-shifting provision

of the IDEA.  See John T. ex rel. Paul T. v. Del. County Intermediate Unit, 318 F.3d 545,

556 (3d Cir. 2003) (holding that "Buckhannon applies to attorney[s'] fee claims brought

under the IDEA fee-shifting provision").  Interpreting Buckhannon, the Third Circuit

stated that "a *stipulated settlement* could confer prevailing party status under certain

circumstances," namely, where it alters the legal relationship of the parties and is

judicially sanctioned.  John T., 318 F.3d at 558.

### 1.    Judicially Sanctioned

The Third Circuit, citing to the Second Circuit decision in A.R. v. N.Y. City Dep't

of Educ., 407 F.3d 65 (2d Cir. 2005) determined that an administrative order that

incorporates the terms of the settlement pursuant to Kokkonen v. Guardian Life Ins. Co.

of America, 511 U.S. 375 (1994) complies with the "judicial *imprimatur*" requirement of

Buckhannon as the order is "enforceable through an action under 42 U.S.C. § 1983 and

under state law." P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 854-55 (3d Cir. 2006). The Third Circuit thus held that "'the combination of administrative *imprimatur*, the change in the legal relationship of the parties arising from it, and subsequent judicial enforceability, render such a winning party a 'prevailing party' under Buckhannon's principles.'" P.N., 442 F.3d at 854, citing A.R., 407 F.3d at 76.

A stipulated settlement is judicially sanctioned where it: 1) contains mandatory language; 2) is entitled "Order"; 3) bears the signature of the judge; and 4) provides for judicial enforcement. John T., 318 F.3d at 558 (citing Truesdell v. Phila. Hous. Auth., 290 F.3d 159 (3d Cir. 2002)).

The Court finds that the May 12, 2005 Consent Order at issue here meets the "judicially sanctioned" requirements set forth in John T. The Consent Order (1) contains mandatory language stating that the Board is required to take certain actions, (2) is entitled "Consent Order," (3) bears the signature of the ALJ, and (4) is enforceable under 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.510 (2002) and in state court. Therefore, the May 12, 2005 Consent Order meets the legal "judicially sanctioned" requirements.

### 2.    Change in the Legal Relationship

The next step in the analysis of determining prevailing party status is to see if the party's success was significant. "Plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Moreover, the Court stated that, to succeed, "at a minimum, .

. . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).

After comparing the requests of the March 2, 2005 Due Process Petition with the relief obtained in the May 12, 2005 Consent Order, the Court finds that Plaintiff succeeded on significant issues in litigation which achieved some of the benefit Plaintiff sought in bringing suit.  The Defendant was required to provide the one-to-one aide as requested and the aide was required to communicate J.N.'s progress to his mother.  The Defendant was required to pay for an evaluation for a Positive Behavior Intervention Plan to be performed by the doctor chosen by Plaintiff.  The Defendant was required to provide J.N. toilet training and maintain his cleanliness.  The legal relationship of the Plaintiff changed because he obtained new enforceable rights against the Defendant as a result of the litigation.

Defendant argues that the "driving force" behind the administrative proceedings was the removal of J.N. from Bankbridge to Bancroft.  However, it is arguable that the provision of the one-to-one aide was the most significant concern to Plaintiff, and that because the requests for an aide were repeatedly denied, J.N.'s mother decided to request a school transfer.

Additionally, Defendant alleges that the provision for a one-to-one aide was agreed upon prior to litigation, and that the only issue in controversy was the placement of J.N. at Bankbridge.  While Defendant did attempt to resolve the aide issue on the business day prior to the March 14, 2005 proceeding, Plaintiff did not respond, and even after the proceeding, there was no final resolution on the issue of the aide.

3. <u>Amount of the Fee Award</u>

Defendant claims that Plaintiff's success was both technical and de minimis.  The Supreme Court noted that certain victories may be considered "technical or de minimis" but characterized its approach as adopting a "generous formulation" of "prevailing party" status.  <u>Tex. State Teachers</u>, 489 U.S. at 792.  The Court clarified the distinction that exists between the issue of plaintiff's eligibility for an attorney's fee award and the amount  of the attorney's fee that should be awarded.  <u>Farrar v. Hobby</u>, 506 U.S. 103, 113-14 (1992).  To the extent the degree of relief is relevant, it is relevant only to the amount of the fee award, not to the fee award's availability.  <u>Tex. State Teachers</u>, 489 U.S. at 782.  However, even under fee-shifting regimes such as 20 U.S.C. § 1415(i)(3) and the "generous formulation" that the Supreme Court gives the term "prevailing party," <u>Hensley</u>, 461 U.S. at 433, attorney's fee awards ultimately are awarded at a court's discretion,  <u>John T.</u>, 318 F.3d at 558.

Plaintiff obtained a Consent Order from Judge Metzger requiring that the first three demands of the Due Process Petition be carried out.  The Order clearly benefitted J.N. and forced the Board to change its behavior, thus altering the parties' legal relationship.  Nevertheless, while Plaintiff may have prevailing party status under the <u>Buckhannon</u> standard, Plaintiff did not succeed on all counts.  This should factor into the careful scrutiny of Plaintiff's counsel's application for attorney's fees.

Yet because Plaintiff is a prevailing party who has achieved success on significant issues, the Court will grant Plaintiff's Motion for Summary Judgment and upon careful review of an adequately supported fee application, will award reasonable attorney's fees limited to the degree of the success attained by Plaintiff.

### III.  Conclusion

For the reasons set forth above,

IT IS ORDERED on this 26th  day of March, 2007 that the motion for summary judgment of Plaintiff J.N., a minor, individually and by his parent and legal guardian, P.S., **[11]** is hereby **GRANTED**.  Plaintiff is found to be the prevailing party, but the Court noted that the application for attorney's fees will be carefully scrutinized to ensure a reasonable award.

IT IS FURTHER ORDERED that the cross-motion for summary judgment by Defendant Mt. Ephraim Board of Education Motion **[12]** is hereby **DENIED**.

 

 

 /S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
 United States District Judge